UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-8958-GW(JEMx) | Date | December 29, 2014 |
| Title | *Porfiria Yocupicio v. PAE Group, LLC. et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:           Attorneys Present for Defendants:

Justin F. Marquez                                   Michael E. Chase

PROCEEDINGS:   **PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES AND COSTS [10]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED.

: 08

Initials of Preparer   JG

<u>*Porfiria Yocupicio v. PAE Group, LLC, et al.*</u>; Case No. CV-14-8958-GW(JEMx)
Tentative Ruling on Motion to Remand

Porfiria Yocupicio ("Plaintiff") filed this putative class action in state court against her former employer, a staffing company called Arch Resources Group, LLC ("Arch"),[1] asserting claims for: (1) missed meal periods, Cal. Lab. Code §§ 226.7, 512; (2) missed rest breaks, *id.* § 226.7; (3) unpaid minimum wages, *id.* § 1194; (4) unpaid overtime, *id.* §§ 1194, 1198; (5) unpaid vacation time, *id.* § 227.3; (6) failure to timely pay temporary employees, *id.* § 201.3; (7) waiting-time penalties, *id.* §§ 201-03; (8) inaccurate itemized wage statements, *id.* § 226; (9) unfair competition, Cal. Bus. & Prof. Code § 17200; and (10) related penalties under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.* See First Amended Complaint ("FAC"), Docket No. 1, Ex. A. In November 2014, Arch removed the case to this Court under authority conferred by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4. *See* Removal Notice, Docket No. 1. Shortly after removal, Plaintiff filed the now-pending Motion to Remand and Request for Attorney's Fees and Costs ("Mot"). Docket No. 10-1. In addition to Plaintiff's Motion, the Court also has before it Arch's Opposition ("Opp.") and supporting evidence, Docket No. 12, and Plaintiff's Reply, Docket No. 14. For the reasons below, the Court would DENY the motion.

**I. Background**

Plaintiff worked for Arch as an hourly-paid, non-exempt employee from October 18, 2012 until September 30, 2013. FAC ¶ 7. After filing her initial Complaint in June 2014, Plaintiff filed the operative FAC in August 2014, alleging that Arch committed various wage-and-hour violations. To vindicate these alleged violations, Plaintiff seeks to recover damages and penalties on behalf of a class consisting of:

> All persons employed by Defendant to work in any hourly paid job position in California at any time during the period beginning four years before the filing of the initial complaint in this action and ending when the notice to the Class is sent. For purposes of this definition, "Defendant" means [PAE], [Arch], and any of the fictitiously named defendants . . . which may include subsidiaries of, or companies owned by, [PAE/Arch.]

FAC ¶ 24. Though Plaintiff purports to represent a class stretching back to 2010, Arch did not employ hourly employees in California until May 15, 2012. *See* Docket No. 12-1, Declaration of John Colagrande ("Colagrande Decl.") ¶ 2. Since that time, Arch has employed 515 people who fall within the class definition, although 245 of those people no longer work for the company. *Id.* ¶¶ 2-3.

**II. Legal Standard**

The right to remove a case to federal court is entirely a creature of statute. *Libhart v. Santa*

---

[1] Until April 2014, Arch was known as PAE Group, LLC ("PAE"). In April 2014, PAE filed a certificate of amendment, changing its name from PAE Group, LLC to Arch Resources Group, LLC. The Court refers to the entity formerly known as PAE, and now known as Arch, by its current name, "Arch."

-1-

*Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Ordinarily, it "is presumed that a cause lies outside the limited jurisdiction of federal courts," *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006), and the Ninth Circuit "strictly construe[s] the removal statute against . . . jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). But, as the Supreme Court recently explained, the rule is different in CAFA cases. No "antiremoval presumption attends cases invoking CAFA" because "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, No. 13-719, ___U.S.___, ___S.Ct.___, 2014 U.S. LEXIS 8435, at *13-*14 (Dec. 15, 2014). Nonetheless, while there is no antiremoval presumption, a removing defendant still "has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("[T]he proper *burden of proof imposed upon a defendant* to establish the amount in controversy is the preponderance of the evidence standard"). In CAFA removals, part of that burden includes showing that the amount in controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), 1453; *Abrego Abrego*, 443 F.3d at 686. If the amount in controversy is indeterminate from the face of the pleading, the defendant must establish the $5 million jurisdictional amount by a preponderance of the evidence. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) ("We have . . . applied the preponderance [standard] to complaints filed under [CAFA] that do not specify a particular amount in controversy") (citing *Abrego Abrego*, 443 F.3d at 683).

To meet that burden, a defendant may rely on the allegations in the pleadings, which courts assume true, *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002); factual statements in its removal notice and concurrently-submitted, "summary-judgment-type evidence," *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (endorsing "the . . . practice of considering facts presented in the removal petition [plus] . . . 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal'"); and supplemental summary-judgment-type evidence submitted in opposition to a remand motion, *Dart Cherokee*, 2014 U.S. LEXIS 8435, at *14. Defendants need not "research, state, and prove the plaintiff's claim for damages," *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1148 (C.D. Cal. 2010), *aff'd* 631 F.3d 1010 (9th Cir. 2011), particularly since the question asks only what the plaintiff has "put in controversy," not how much the defendant should truly owe. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Nonetheless, because the standard is preponderance of the *evidence*, courts cannot base jurisdictional determinations on "speculative and self-serving assumptions" that are not clearly suggested by the pleadings or supported by evidence. *Garibay v. Archstone Communities LLC*, 539 Fed.Appx. 763, 764 (9th Cir. 2013); *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1118, 1127 (C.D. Cal. 2010) ("[W]hen applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not *clearly suggested by the complaint or supported by evidence*, concluding that the calculations are mere conjecture") (emph. added) (collecting cases).

If after reviewing the pleadings and the defendant's summary-judgment-type evidence, a court finds it "more likely than not" that the plaintiff put over $5 million in controversy, remand is unwarranted. *Abrego Abrego*, 443 F.3d at 689. But if the pleadings and evidence do not establish the threshold jurisdictional amount by a preponderance of the evidence, the case must be remanded to state court. *Id.*; *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1172 (C.D. Cal. 2008).

## III. Analysis

Arch seeks to establish the jurisdictional minimum amount in controversy based on various categories of damages and Labor-Code penalties, plus potential future attorney's fees. Removal Notice ¶¶ 73, 76; Opp. at 9:12-23. Plaintiff challenges Arch's calculation, arguing, first, that Arch improperly included PAGA penalties and attorney's fees in the amount-in-controversy calculation, and second, that Arch has not submitted sufficient evidence to show more than $5 million in controversy by a preponderance of the evidence. The Court addresses both arguments in turn below.

### A. *PAGA Penalties Are Properly Included in the Amount-in-Controversy Calculation*

Citing recent Ninth Circuit authority, Plaintiff argues that PAGA penalties cannot be used to establish CAFA's $5 million jurisdictional threshold where the PAGA claim is *not* asserted on behalf of the putative class. Mot. at 7:14-11:6. Specifically, Plaintiff cites *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014), and *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027 (9th Cir. 2014), for her claim that: "Ninth Circuit Case Law Clearly and Unequivocally Holds That PAGA Penalties Cannot be Used to Establish CAFA Jurisdiction." Mot. at 7:14-11:16.

In truth, neither *Baumann*, *Louie*, nor any other Ninth Circuit case stands for that proposition. CAFA jurisdiction has four basic elements: (1) the case is a "class" or "mass" action, (2) the class or mass action consists of 100 or more members, (3) the matter in controversy exceeds $5 million,[2] and (4) at least one class member and one defendant are citizens of different states. *See* 28 U.S.C. § 1332(d); *Louie*, 761 F.3d at 1039 ("CAFA grants district courts original jurisdiction over 'a class action' if the class has more than 100 members, the amount in controversy [exceeds $5 million] and the parties are minimally diverse"). *Baumann* and *Louie* address the first requirement – whether a case qualifies as a "class action."[3] In *Baumann*, the Ninth Circuit found that a PAGA action that did not invoke California's class action statute,[4] Cal. Civ. Proc. Code § 382, was not a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B), and thus could not be removed under CAFA. 747 F.3d at 1121-24. In *Louie*, the Ninth Circuit held that an enforcement action brought by a state attorney general, where the attorney general expressly disavowed filing a class action, was not a "class action" under 28 U.S.C. § 1332(d)(1)(B), and thus could not be removed under CAFA. *Louie*, 761 F.3d at 1040.[5] In other words, both cases addressed questions about the first CAFA element – what types

---

[2]The amount-in-controversy rules are slightly different for "mass" actions, though the differences have no impact on this case. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *Abrego Abrego*, 443 F.3d 676, 686-90.

[3]*See Baumann*, 747 F.3d at 1121 ("[T]he only issue for decision is whether this is a 'class action'"); *Louie*, 761 F.3d at 1039 ("A 'class action' is defined as 'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.' Because these complaints were not filed under Federal Rule 23, the issue is whether the Attorney General filed them under a 'similar' state rule or statute.") (citations omitted).

[4]*Baumann*, 747 F.3d at 1121 ("The complaint . . . did not invoke the California class action statute").

[5]*See also Louie*, 761 F.3d at 1032-33 ("The actions were 'brought by the State of Hawaii in its sovereign capacity . . . on behalf of the State and its citizens,' as authorized by . . . the Hawaii Revised Statutes, and also under the State's '*parens patriae* authority.' In each complaint, the Attorney General explicitly disavowed that he filed a class action[.]"); *id.* at 1039-40 ("As the district court noted . . . the Attorney General's attempt to bring these actions

of cases qualify as CAFA "class actions" – but not the third, though that is the only relevant element here.[6]

Instead of asking whether this case qualifies as a CAFA "class action," the real question is whether PAGA penalties count towards the jurisdictional minimum in cases that are unquestionably filed as CAFA "class actions," but where a PAGA claim is asserted on a non-class, representative basis. Despite Plaintiff's contention that "Ninth Circuit case law clearly and unequivocally holds that PAGA penalties cannot be used to establish CAFA jurisdiction," the Ninth Circuit actually has not addressed this question. This Court, however, would find that the answer to that question is yes.

28 U.S.C. § 1332(d)(2) provides that a district court "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action[.]" 28 U.S.C. § 1332(d)(6) states that: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." Plaintiff reads this language to mean that only "class claims" can be factored into the amount-in-controversy figure, meaning a non-class PAGA claim cannot. Mot. at 8:28-9:12. But that is not what the statute says. The statute says that courts have jurisdiction over "class actions" where the amount in controversy exceeds $5 million, and that, in "any class action, the claims of individual class members shall be aggregated to determine [the amount in controversy]." As Plaintiff has invoked § 382, this case is plainly a "class action." Plaintiff, an "individual class member," is the person asserting the PAGA claim. Since this is a "class action" and the PAGA claim is one brought by an "individual class member[]," § 1332(d)(6) instructs that this Court "shall . . . aggregate[] [the amount] to determine [the amount in controversy]." *See Standard Fire Ins. Co. v. Knowles*, ___ U.S. ___ 133 S. Ct. 1345, 1348 (2013) ("[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million").[7] Plaintiff's ultimate argument – that only

---

while disclaiming class status may fail under state law. Nonetheless, we cannot disregard the complaints' unambiguous class action disclaimers. To be removable under CAFA, a 'class action' must be 'filed under' Rule 23 or a state law equivalent. The appropriate inquiry is therefore whether a complaint seeks class status. Accordingly, we have held that a plaintiff files a class action for CAFA purposes by invoking a state class action rule, regardless of whether the putative class ultimately will be certified. The converse is also true: Failure to request class status or its equivalent is fatal to CAFA jurisdiction.") (citations omitted); *id.* at 1042 ("Because the complaints unambigu-ously disclaimed class status, these actions cannot be removed under CAFA").

[6] Indeed, the answer to the first CAFA question, whether this case is a class action, is clearly yes, as Plaintiff expressly invoked Cal. Civ. Proc. Code § 382 when filing the Complaint and FAC. *See* FAC ¶ 22 ("Plaintiff brings this action individually, as well as on behalf of each and all other persons similarly situated, and thus seek[s] class certification under California Code of Civil Procedure § 382"); *Louie*, 761 F.3d at 1040 ("[A] plaintiff files a class action for CAFA purposes by invoking a state class action rule, regardless of whether the putative class ultimately will be certified") (citations omitted). The second and fourth CAFA requirements are undisputed. *See generally* Mot. (not challenging numerosity or minimum-diversity requirements); *see also* Removal Notice ¶ 7.

[7] *See also Quintana v. Claire's Stores, Inc.*, No. 13-CV-368-PSG, 2013 U.S. Dist. LEXIS 58289, at *9-*12 (N.D. Cal. Apr. 22, 2013) (rejecting Plaintiff's exact argument: "Plaintiffs make no assertion that the language in either their jurisdiction statement or their prayer for relief includes their PAGA claims. They in fact state that not only did they not include their PAGA claims in the requests for relief but that 'because PAGA is not a class action

class claims should count towards the amount-in-controversy requirement – is not facially illogical given CAFA's stated focus on deterring *class action* abuses. *See Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009) ("CAFA was designed primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts"). But the only way to reach Plaintiff's result is to ignore the statutory language and misread *Baumann* and *Louie*. This Court is not going to adopt that approach.

As a fallback position, Plaintiff argues that the Court can only consider 25% of the potential PAGA penalties when calculating the amount in controversy because 75% goes to the Labor & Workforce Development Agency ("LWDA"), not the putative class members. Mot. at 11:9-12:25. To support this argument, Plaintiff relies on cases involving non-CAFA diversity removals, which apply the anti-aggregation rule, or on cases relying on those non-CAFA, anti-aggregation cases.[8]

For reasons set out in *Pagel v. Dairy Farmers of Am., Inc.*, 986 F.Supp.2d 1151 (C.D. Cal. 2013), this Court finds Plaintiff's authorities unpersuasive. As the district court explained in *Pagel*, federal courts have long "accepted the general rule that multiple plaintiffs who join together in a single lawsuit to enforce their rights as individuals may not aggregate their claims to satisfy a jurisdictional threshold for the amount in controversy." While this so-called "anti-aggregation" rule is subject to certain exceptions – for example, aggregation is allowed if multiple plaintiffs have a

---

and cannot be removed under CAFA, Plaintiffs correctly leave the representative action out of the amount in controversy averment for their class action.' To support this argument, Plaintiffs rely on Ninth Circuit case law holding the representative actions cannot be removed under CAFA. But Plaintiffs cite no case law, and the court has not found any, suggesting that representative PAGA claims accompanying class action claims are exempt from the amount-in-controversy calculation. Several district courts in fact have considered PAGA claims in their assessment of the amount in controversy in similar remand motions. *Guglielmino* supports inclusion of the PAGA claims in the amount-in-controversy evaluation. In that case, the Ninth Circuit noted that 'because recovery of [back payment of health benefits and taxes and an accounting of moneys due] would entail payment by' the defendant, the court was 'convinced that they must be included within any amount-in-controversy calculation.' It is true that *Guglielmino* did not involve removal under CAFA, but the statute itself further supports that PAGA claims should be part of the amount-in-controversy analysis. CAFA instructs courts that 'the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.' Plaintiffs are members of the class . . . and so their PAGA representative claims must be included in the court's aggregation of claims for determination of whether CAFA jurisdiction exists.") (citations omitted).

[8]*See Carranza v. Nordstrom, Inc.*, 2014 U.S. Dist. LEXIS 172307, at *62 & n.99 (C.D. Cal. Dec. 12, 2014) (citing *Smith v. Brinker Int'l, Inc.*, No. 10-CV-213-VRW, 2010 U.S. Dist. LEXIS 54110 (N.D. Cal. May 5, 2010) (non-CAFA diversity removal), and *Pulera v. F&B, Inc.*, 08-CV-275-MCE(DADx), 2008 U.S. Dist. LEXIS 72659 (E.D. Cal. Aug. 18, 2008) (non-CAFA diversity removal)); *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, No. 14-CV-6245-MMM(PLAx), 2014 U.S. Dist. LEXIS 168946, at *94-*99 (C.D. Cal. Dec. 5, 2014) (citing same cases for anti-aggregation rationale)); *Main v. Dolgen Cal., LLC*, No. 13-CV-1637-MCE(KJNx), 2013 U.S. Dist. LEXIS 154551, at *5-*7 (E.D. Cal. Oct. 24, 2013) (citing *Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118 (9th Cir. Cal. 2013) (non-CAFA diversity removal relying on anti-aggregation rationale), and *Pulera*, 2008 U.S. Dist. LEXIS 72659)); *Hernandez v. Towne Park, Ltd.*, No. 12-CV-2972-MMM(JCGx), 2012 U.S. Dist. LEXIS 86975, at *53-*55 (C.D. Cal. June 22, 2012) (citing *Pulera*, 2008 U.S. Dist. LEXIS 72659, and *Troy Bank v. G. A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911) (non-CAFA diversity removal citing anti-aggregation rationale)). *See also Sanchez v. Res-Care, Inc.*, No. 13-CV-09415-RGK(SHx), 2014 U.S. Dist. LEXIS 26420, at *5-*7 (C.D. Cal. Feb. 28, 2014) (citing *Urbino*, 726 F.3d 1118); *Controulis v. Anheuser-Busch*, No. 13-CV-07378-RGK(AJWx), 2013 WL 6482970, at *4 (C.D. Cal. Nov. 20, 2013) (same); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 13-CV-474-AWI (BAMx), 2014 U.S. Dist. LEXIS 18024, at *27 (E.D. Cal. Feb. 12, 2014) (citing *Main*, 2013 U.S. Dist 154551).

"common and undivided" right or interest against a defendant – the general rule is that "separate and distinct" claims cannot be aggregated to satisfy the jurisdictional amount. *See id.* at 1155-57.

Before CAFA, the Ninth Circuit held that the anti-aggregation rule supersedes another typical method for calculating the jurisdictional amount in class actions – the "total detriment" or "either viewpoint" rule. *Id.* at 1159 (citing *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001)). Under that rule, the jurisdictional amount can be calculated by focusing on the defendant's total exposure, regardless of source. In finding that the anti-aggregation rule superseded the total-detriment rule, the Ninth Circuit recognized that the total-detriment approach was "basically the same thing as aggregation." *Ford Motor Co.*, 264 F.3d at 959. Because the anti-aggregation rule and total detriment rule conflicted, the Ninth Circuit resolved that the latter must yield. *See id.* at 958-59 (acknowledging "the inherent conflict between the 'either viewpoint' rule and the non-aggregation rule . . . in class action suits," and determining "that the former must [therefore] yield").

In passing CAFA, however, Congress specifically disavowed the anti-aggregation rule for CAFA class actions, and with it, the justification for rejecting the total detriment approach. Absent that justification, this Court, like many others, sees no reason why it should not measure the amount in controversy by the total potential detriment to the defendant, regardless of its source; indeed, as that approach measures what the defendant will have to pay if Plaintiff proves up her pleading, it is undoubtedly a fair measure of what the plaintiff has put "in controversy." *See also, e.g., Pagel*, 986 F.Supp.2d at 1159 ("The 'either viewpoint' rule is not used in diversity class actions because it would subvert the anti-aggregation rule. It does not follow that the . . . rule is prohibited in CAFA cases. The opposite is true: the long line of precedent tracing back to [*Mississippi & M.R. Co. v. Ward*, 67 U.S. 485 (1862)] endorsing the use of the 'either viewpoint' rule to assess the amount in controversy applies with equal force in CAFA cases. The reason for the prohibition on the rule having vanished, the rule should continue to be used to measure 'the value of the 'thing sought to be accomplished by the action.'") (quoting *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (quotations omitted)); *Arens v. Popcorn, Ind., LLC*, No. 14-CV-1323-SC, 2014 U.S. Dist. LEXIS 81651, at *6-*7 (N.D. Cal. June 16, 2014) ("Determining the amount in controversy in a CAFA case requires application of the either-viewpoint rule") (collecting cases); *Quintana*, 2013 U.S. Dist. LEXIS 58289, at *11-*12, 2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) ("*Guglielmino* supports inclusion of the PAGA claims in the amount-in-controversy evaluation. In that case, the Ninth Circuit noted that 'because recovery of [back payment of health benefits and taxes and an accounting of moneys due] would entail payment by' the defendant, the court was 'convinced that they must be included within any amount-in-controversy calculation.' It is true that *Guglielmino* did not involve removal under CAFA, but the statute itself further supports that PAGA claims should be part of the amount-in-controversy analysis. CAFA instructs . . . that 'the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.' Plaintiffs are members of the class they seek to represent, and so their PAGA representative claims must be included in the court's aggregation of claims for determination of whether CAFA jurisdiction exists.") (citations omitted); *Schiller v. David's Bridal, Inc.*, No. 10-CV-616-AEI, 2010 U.S. Dist. LEXIS 81128, at *25 (E.D. Cal. July 14, 2010) ("[T]he question is not how much Plaintiff or the class will ultimately recover; the amount in controversy is calculated based upon the amount put into controversy by the complaint, regardless of how the recovery is divided. Thus, it makes little difference whether the LWDA shares in the

-6-

recovery – Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in controversy."); *Berry v. American Express Pub. Corp.*, 381 F.Supp.2d 1118, 1123(C.D. Cal. 2005), *disagreed with on other grounds by Abrego Abrego*, 443 F.3d at 685 ("Given the explicit statutory change allowing aggregation of claims in class actions . . . finding the amount of controversy from the aggregate cost to defendants does not circumvent any non-aggregation principles"); *Rippee v. Boston Mkt. Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal. 2005) (concluding that CAFA reinstated the total detriment rule for class actions). And, while the Senate Committee Report is not necessarily a *definitive* guide to what CAFA means,[9] it further confirms the propriety of using the total detriment approach under CAFA. *See* S. Rep. 109-14, at *42-*43 (2005), *reprinted at* 2005 U.S.C.C.A.N. 3, at *40-*41 ("[T]he Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief) . . . . Some courts have held that jurisdiction does not exist [if the amount in controversy exceeds $5 million from the defendant's perspective], because they have reasoned that assessing the amount in controversy from the defendant's perspective was tantamount to aggregating damages. Because [current § 1332(d)(6)] explicitly allows aggregation for purposes of determining the amount in controversy in class actions, that concern is no longer relevant.").

The Court would include the entire PAGA penalty in its amount-in-controversy calculation.

### B. *Attorney's Fees Are Properly Included in the Amount-In-Controversy Calculation*

The Court would also include attorney's fees equal to 25% of the total recovery in its amount-in-controversy figure. Plaintiff argues that "the only fees to be considered as part of the amount in controversy calculation are those incurred as of . . . removal." *See* Mot. at 16:10-23 (quotations omitted). But several of Plaintiff's claims provide for fee-shifting. In similar scenarios, including in cases upon which Plaintiff relies, the Ninth Circuit has held that a court may properly include in its amount-in-controversy calculation attorney's fees equal to 25% of the total recovery. *Garibay*, 539 Fed.Appx. at 764 ("Although [Defendant] correctly notes that 25% recovery is the 'benchmark' level for reasonable attorney's fees in class action cases, and that such fees are properly included in calculations of the amount in controversy, [Defendant] has not established by a preponderance of the evidence that the underlying amount upon which those fees would be based is at least $4 million, as would be required to meet the . . . minimum") (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *over'd on other grounds by Knowles*, 133 S.Ct. 1345).

The Court would thus include a 25% fee award in its amount-in-controversy calculation.

### C. *Arch Has Demonstrated At Least $5 Million by a Preponderance of the Evidence*

Even if PAGA penalties and attorney's fees are included in the amount-in-controversy figure, Plaintiff contends that Arch has failed to demonstrate $5 million in controversy by a preponderance of the evidence. To support this position, Plaintiff advances essentially two arguments. First, she suggests that inconsistencies between the evidence supporting Arch's Removal Notice and that supporting the Opposition call Arch's evidence into question. Reply at 2:5-4:16, 6:18-27. Second,

---

[9]*See Pagel*, 986 F.Supp.2d at 1160 (outlining drawbacks to relying on Senate Committee Report); *but see Abrego Abrego*, 443 F.3d at 686 (relying heavily on Senate Committee Report to interpret CAFA).

Plaintiff argues that Arch improperly assumed a 100% violation rate for her claims. *Id.* at 4:7-6:17.

The Court would reject Plaintiff's arguments. To support its amount-in-controversy figure, Arch offered a declaration from its COO, John Colagrande. Colagrande's declaration explains that Arch has only had California hourly employees since May 15, 2012. *Id.* ¶ 2. The declaration then recounts each project that Arch has staffed since May 15, 2012, each project's length, the number of employees who worked on each project, the number of shifts worked on each project, the lengths of the shifts worked, and the number of terminated employees. *See id.* ¶¶ 3, 6-26. These figures are supported by exhibits containing summary payroll records; with its Opposition, Arch also provided Plaintiff with all 2,200 pages of punch data for the class period. *See* Docket No. 12-2; Docket No. 12-3, Declaration of Michael E. Chase ("Chase Decl."), ¶ 4. Colagrande's declaration also explains that Arch assumed a $9 hourly rate for each employee, though many employees made more, since $9 is the minimum hourly wage. *Id.* ¶ 4. While Plaintiff lobs vague attacks at Arch's amount-in-controversy evidence, the Court finds it thorough. Indeed, Plaintiff's inability to identify specific deficiencies[10] in the declaration or supporting evidence leads the Court to find that Arch's evidence is reliable and sufficient to support removal, provided, of course, that it uses acceptable parameters.

As for parameters, Plaintiff contends that Arch's amount-in-controversy evidence wrongly assumes a 100% violation rate, citing various cases for the proposition that: "federal courts may not assume a 100% violation rate unless that assumption is supported by the specific allegations of the [C]omplaint or the defendant's evidence." Reply at 4:17-6:3. This Court fully agrees with that proposition. But it is unhelpful to Plaintiff in this case since *she did* allege 100% violation rates.

The FAC alleges that putative class members did not receive meal or rest breaks "at all." *See* FAC ¶ 8 ("Defendants' policy and practice was for Plaintiff and the Class to work through meal periods and to not provide them the opportunity to take any meal periods at all"); *id.* ¶ 9 ("Defendants' policy and practice was for Plaintiff and the Class to work through rest periods and to not provide them the opportunity to take any rest periods at all"). Many claims derive from the failure to provide meal and rest periods, meaning it is appropriate to apply a 100% violation-rate to those claims as well; other claims allege that Arch has a policy and practice of not maintaining accurate wage statements and records. *Id.* ¶¶ 109-11. In other words, Plaintiff's allegations provide sufficient support to apply a 100% violation rate, and Arch has properly applied that rate to well-supported facts about persons employed during the class period. *Altamirano v. Shaw Indus.*, No. 13-CV-939-EMC, 2013 U.S. Dist. LEXIS 84236, at *19 (N.D. Cal. June 14, 2013) (aptly summarizing litany of district court and Ninth Circuit cases: "Overall, with some exceptions, most of the cases conducting this analysis appear to allow the defendant to assume a 100% violation rate [if] such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint").[11]

---

[10] Other than challenging Arch's parameters, Plaintiff's only specific attack on Colagrande's declaration is that it improperly includes overtime payments for 6-hour shifts. *See* Reply at 6:4-17. But as Arch explains in its brief, *overtime penalties were not included in the amount-in-controversy calculation. See* Opp. at 5 & n.2, 9:25-27.

[11] Plaintiff suggests that, notwithstanding her 100% allegations, Arch cannot apply a 100% violation rate without supplying summary-judgment type evidence. Mot. at 5:5-6:3. This argument misreads the cases Plaintiff cites. As *Roth* explains, courts "have refused to credit damage calculations" unless the "variables [are] clearly suggested by the complaint *or* supported by [the defendant's] evidence[.]" 799 F.Supp.2d at 1127; *Kenneth Rothschild Trust*, 199 F.Supp.2d at 1001 ("In measuring the amount in controversy, a court must assume that the

Accordingly, the Court would conclude that Arch has carried its burden to support removal.

## IV. Conclusion

The Court would DENY the motion.

---

allegations of the complaint are true . . . that a jury will return a verdict for the plaintiff on all claims made in the complaint"). Thus, where the parameters *are* clearly suggested by the Plaintiff's pleadings, a defendant is entitled to rely on the plaintiff's allegations. *Altamirano*, 2013 U.S. Dist. LEXIS 84236, at *12 (explaining that defendants need not "under all circumstances produce 'summary-judgement-type evidence.' [Rather, the caselaw] specifically contemplates the possibility that a defendant may meet its burden of demonstrating the amount in controversy [by] assuming the allegations in the complaint . . . true, even [if] the complaint does not specify the amount . . . sought.").

Unlike in *Roth*, therefore, where the defendant assumed parameters not clearly suggested by the Complaint or supported by the defendant's evidence, here, Arch calculated the amount in controversy by properly applying Plaintiff's allegations to its summary judgment-type evidence. It is not Arch's responsibility to prove or disprove Plaintiff's allegations. *See Coleman*, 730 F.Supp.2d at 1148 ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages") (citations and quotations omitted). As the "master of the complaint," Plaintiff could have avoided this result by more delicate (or, perhaps, realistic) pleading. Having failed to do so, however, she can hardly complain when Arch simply relies on her own allegations to support removal.